IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


SAMANTHA CAMERON                                                      PLAINTIFF

        V.                        CIVIL NO. 2:15-cv-02051-MEF

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                        DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Samantha Cameron, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.  Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on November 30, 2011, alleging disability since May 15, 2011 due to a herniated disc in her lower back. (T. 264-269, 270-273, 391) Her applications were denied initially on May 16, 2012, and upon reconsideration on June 21, 2012. (T. 125-127, 128-130, 132-133, 134-135) On July 12, 2012, Plaintiff requested an administrative hearing (T. 136-137), and the hearing was held on October 18, 2012, before the Hon. Harold D.

-1-

Davis, Administrative Law Judge ("ALJ"). (T. 32-50) Plaintiff appeared in person and was not represented. (T. 34) The ALJ issued an unfavorable decision on December 3, 2012, finding that Plaintiff was not disabled within the meaning of the Act. (T. 91-107) On December 12, 2013, the Appeals Council remanded the case to the ALJ for further administrative proceedings, to include further consideration of the severity of Plaintiff's mental impairment and her mental residual functioning capacity ("RFC"). (T. 108-111)

On remand, a supplemental administrative hearing was held on October 16, 2014. (T. 51-84) Plaintiff appeared in person and was represented by an attorney, Michael Hamby. (T. 51, 53) Plaintiff and Montie Lumpkin, a vocational expert ("VE"), testified at the hearing. (T. 53-84)

Plaintiff, born in 1971, was 40 years old at the time of her applications for DIB and SSI, and she was 41 years old on the date her DIB insured status expired on September 30, 2012. (T. 24) She finished tenth grade in 1987. (T. 391) She had past relevant work ("PRW") experience as a lumber yard worker, industrial cleaner, and stock clerk. (T. 24, 74, 392) Plaintiff alleges she stopped working on May 15, 2011 because of her condition(s). (T. 391)

By a written Decision dated November 20, 2014, the ALJ found Plaintiff had the following severe impairments: scoliosis of the lumbar spine, degenerative disc disease of L3-4 and L4-5, mild facet stenosis at L4-5, borderline intellectual functioning, and depression. (T. 15-16) After reviewing all of the evidence presented, the ALJ determined Plaintiff's severe impairments did not meet or equal the level of severity of any impairment in the Listing of Impairments. (T. 16-18) The ALJ found Plaintiff had the RFC to perform medium work, except that she is limited to work with simple tasks and simple instructions, and she can have only incidental contact with the public. (T. 18-24)

The ALJ found that Plaintiff is unable to perform any PRW. (T. 24) With the help of a

vocational expert ("VE"), and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 25) Specifically, the VE testified that Plaintiff could perform the duties of representative occupations such as hand packer (DOT 920.587-018; medium, unskilled, svp 2; 41,353 nationally/319 Arkansas), kitchen helper (DOT 318.687-010; medium, unskilled, svp 2; 273,590 nationally/1,785 Arkansas), and industrial cleaner (DOT 381.687-018; medium, unskilled, svp 2; 12,392 nationally/101 Arkansas). (T. 74, 77-78) The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (T. 26)

Plaintiff requested a review of the hearing decision by the Appeals Council (T. 5-8), which request was denied on January 29, 2015 (T. 1-4). Plaintiff then filed this action on March 19, 2015. (Doc. 1) This case is before the undersigned pursuant to the consent of the parties. (Doc. 9) Both parties have filed appeal briefs (Docs. 11, 12), and the case is ready for decision.

## II.  Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*. Thus, the Court's review is limited and deferential to the Commissioner. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014).

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d

1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.  Discussion

While not specifically articulated, Plaintiff appears to argue two issues on appeal: (1) that the ALJ erred in his credibility evaluation of Plaintiff's subjective complaints, and (2) that substantial evidence does not support the ALJ's mental RFC assessment. (Doc. 11, pp. 4-6) The Commissioner's response is that the ALJ evaluated Plaintiff's history of medical treatment, the reported objective medical findings of record, the type and effectiveness of treatment, the medical assessments of record, Plaintiff's reported activities of daily living, and Plaintiff's subjective complaints in assessing her credibility and in determining RFC, and that the ALJ's credibility and RFC assessments are supported by substantial evidence. (Doc. 12, pp. 5-12)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### A.  The ALJ Properly Considered Plaintiff's Credibility

The ALJ commented that he considered "but granted little probative weight" to the Plaintiff's testimony, and that "the paucity of evidence does not support the [Plaintiff's] ultimate allegation of disability." (T. 24) The ALJ gave as reasons for his credibility determination the Plaintiff's ability "to maintain her household, do laundry, cook, drive, shop, and tend to her personal hygiene in conjunction with the medical evidence demonstrating minimal abnormalities," finding that such evidence reflected "a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments." (T. 24)

Plaintiff's only argument on this issue seems to be that the ALJ should not have discounted

-5-

Plaintiff's testimony because of the lack of medical treatment as Plaintiff had no insurance or financial ability to pay for treatment. (Doc. 11, p. 5) Although Plaintiff claimed an inability to afford treatment, the ALJ noted "there is no indication that the [Plaintiff] availed herself of and exhausted all possible resources available," suggesting to the ALJ that Plaintiff's impairments and the resulting limitations were not as debilitating as alleged. (T. 20)

A lack of funds may justify a failure to receive medical care, *see Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003); however, a lack of funds alone will not excuse a claimant's failure to obtain treatment or follow medical advice. The Secretary's regulations also provide that a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits. 20 C.F.R. §§ 404.1530, 416.930. Generally speaking, a lack of evidence that a claimant attempted to find any low-cost or no-cost medical treatment for an alleged impairment is inconsistent with a claim of disability. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low-cost medical treatment or that claimant had been denied care because of her poverty).

Here, there is simply no evidence of record that Plaintiff ever sought low-cost or no-cost medical treatment. Plaintiff's failure to contact the Good Samaritan Clinic, for example, or any other clinics offering services to the uninsured or underinsured, prevents us from concluding that her financial condition excuses her failure to obtain consistent treatment. The record is also devoid of evidence that Plaintiff was ever turned down for treatment due to her inability to pay for medical services. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons). Further, in spite of her alleged inability to

afford treatment and medication, Plaintiff also continued to drink alcohol during the relevant period (at times reportedly as much as 12 to 15 cans of beer per day, but more recently only occasionally). (T. 467, 502) Accordingly, Plaintiff's failure to seek consistent treatment is not excused and may properly be considered in the ALJ's credibility analysis. *See Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) ("lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations") (internal quotations omitted).

Plaintiff attempts to explain her failure to seek low-cost medical treatment by pointing to her limited education and learning disabilities, which she claims significantly limited her understanding of the possible resources that may be available. (Doc. 11, p. 5) There is no indication in the record, however, that Plaintiff's limited education and intellectual functioning precluded her from seeking out low-cost resources for treatment.

The question, ultimately, is not whether the evidence supports the existence of an impairment, but whether the evidence of record as a whole can support a claimant's allegations of disabling symptoms. *Benskin v. Bowen*, 830 F.2d 878 (8th Cir. 1987). If there are inconsistencies in the evidence of record as a whole, the ALJ is free to disbelieve a claimant's subjective complaints and find them not credible. *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989).

The Eighth Circuit has held that, "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted great deference in that regard." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). If the ALJ discredits a claimant's credibility and gives good reason for doing so, the Eighth Circuit has held that it will defer to the ALJ's judgment even if the ALJ does not cite to

*Polaski*[1] or discuss every factor in depth. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

In the present case, the ALJ has cited to the *Polaski* factors and the Social Security Regulations and Rulings that expand upon them. It is clear to the undersigned that the ALJ applied the proper legal standard to the determination of whether Plaintiff's allegations and testimony were credible, and there is substantial evidence of record to support the ALJ's decision to discount Plaintiff's credibility.

### B.  Mental RFC Assessment

Plaintiff next appears to argue, in one short paragraph, that two psychological evaluations, one in 2012 by Don Ott, Psy.D., and another on March 25, 2014 by Steve Shry, Ph.D., undermine the ALJ's mental RFC assessment. (Doc. 11, pp. 5-6)

RFC is the most a person can do despite that person's limitations, and it is assessed using all relevant evidence in the record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of limitations. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The ALJ is required to specifically set forth a claimant's limitations and to determine how those limitations affect his RFC. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003).

Plaintiff first relies on the evaluation of Dr. Ott, a consultative psychological examiner, who

---

[1]*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

examined Plaintiff on April 16, 2012, contending that Dr. Ott noted Plaintiff's "capacity to cope with the mental demands of work was deficient, her vocabulary and fund of information was very limited and her pace was delayed on information questions that required her to generate answers." (Doc. 11, p. 5) Plaintiff informed Dr. Ott that she had received disability benefits from 2000 until 2010 based on a back injury and depression; that she returned to work for about a month in 2010[2] but had to stop due to excessive absences; and, she described her mood as "really bad depressed" while noticeably grinning and covering her mouth. (T. 465) She related that she had spent five days at a mental hospital in July, 2011, that Prozac was prescribed, and that she had not taken it since her discharge from the hospital. (T. 466) The record shows that Plaintiff had been hospitalized at The Bridgeway from July 13-18, 2011 following an overdose of her husband's anti-convulsants. (T. 442) She had been discharged with a prescription of Prozac and was instructed to follow up with her local mental health center. (T. 443) As the ALJ recognized (T. 20), Plaintiff's failure to take her Prozac as prescribed is further evidence that her mental impairment was not as limiting as alleged. *See Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) (a failure to follow a recommended course of treatment weighs against a claimant's credibility).

On examination, Dr. Ott found Plaintiff to be pleasant and cooperative, and her posture, movements, grooming, hygiene, and ability to relate were all appropriate. (T. 467) Plaintiff was relaxed, displayed no distress, and her eye contact and range of affect were satisfactory. (T. 467) She did not demonstrate any pressured speech or loosened associations; no symptoms of a thought disorder were observed, and her thoughts were rational, coherent, and goal-directed; there was no

---

[2] In truth, Plaintiff had returned to work in 2004. She earned $10,877.15 that year while working at Wal-Mart. (T. 279, 281) She earned $4,285.66 during 2005, and she earned $3,487.29 during the second and third quarters of 2011. (T. 278-279, 281-282)

evidence of delusions or bizarre thinking; and, no auditory or visual hallucinations were observed or reported. (T. 467) Plaintiff was alert and oriented to person, place, and time, with no loss of contact with reality. (T. 468) She denied any suicidal intent, reported drinking 12 to 15 cans of beer per day, and reported she was not on any psychotropic medications. (T. 466, 467) Dr. Ott concluded that Plaintiff's history, symptoms, and presentation indicated alcohol dependence and alcohol-induced mood disorder, and he estimated her GAF to be 55-65.[3] (T. 469)

Regarding adaptive functioning, Dr. Ott found that Plaintiff had a very limited fund of information, had a deficient (but not absent) capacity to cope with the mental demands of work, and she demonstrated delayed pace on math calculations and tasks that required her to generate information. (T. 469-470) Dr. Ott also noted, however, that Plaintiff's cognitive abilities were fair; she reported no major conflict with people and had regular social contact; had adequate verbal skills; had no specific limitations in the areas of concentration or persistence; and, that she was able to manage her own funds without assistance. (T. 469-471)

The ALJ acknowledged that Plaintiff was limited in some areas (T. 20), but the Court agrees with the ALJ that Dr. Ott's evaluation generally supports the ALJ's conclusion that such limitations would not preclude Plaintiff from performing work involving simple tasks with simple instructions and only incidental contact with the public.

Plaintiff next relies on the evaluation of Dr. Shry, another consultative psychological examiner, who examined Plaintiff on March 25, 2014, contending that Dr. Shry noted that Plaintiff "did not tolerate frustration well," and that she would likely demonstrate significant impairment in

---

[3] A GAF of 51-60 indicates moderate symptoms, while a GAF of 61-70 indicates some mild symptoms. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

her ability to understand and to sustain persistence when performing tasks. (Doc. 11, pp. 5-6)

Plaintiff presented to Dr. Shry stating, "[m]y depression is bad because no one wants to hire me," and he noted that she reported trying to get work but not getting hired. (T. 501) Such efforts to find a job, of course, are inconsistent with Plaintiff's claim of disability. *See Melton v. Apfel*, 181 F.3d 939, 942 (8th Cir. 1999) (claimant's search for work after his alleged onset date undermined his claim that he was unable to work). She reported having symptoms of depression "off and on" since 2009 (more so over the past twelve months), but she admitted that such symptoms "have not impeded her from working, she has just not been able to "be hired" and "can't find work." (T. 501)

Upon examination, Dr. Shry found Plaintiff to be functioning within the borderline range intellectually, and she appeared to meet the diagnostic criteria for adjustment disorder with depressed mood, mild to moderate, and borderline intellectual functioning. As for the effects of her mental impairments on her adaptive functioning, Dr. Shry found that Plaintiff did not appear to be impaired in her ability to communicate and interact in a socially acceptable manner when under stress; she could communicate in an intelligible and effective manner; she did not appear to have much difficulty comprehending and carrying out simple tasks; she did not appear significantly impaired in her ability to cope with the typical demands of basic work-like tasks when the tasks are simple; she attended well and did not demonstrate an inability to attend and sustain concentration on tasks once she understood the instructions; and, she did not appear to be impaired in her ability to complete simple work-like tasks within acceptable time frames. (T. 503-504)

Consistent with Dr. Shry's opinion, the ALJ concluded that Plaintiff was capable of performing work that involved simple tasks with simple instructions. (T. 18) The Court agrees.

The ALJ's mental RFC assessment also finds support in the opinions of non-examining State

agency medical consultants. Cheryl Woodson-Johnson, Psy.D. opined on May 16, 2012 that Plaintiff retained the ability to perform simple, routine tasks. (T. 490) Dr. Woodson-Johnson's assessment was affirmed by Sheri L. Simon, Ph.D., on June 19, 2012. (T. 499) It was appropriate for the ALJ to consider these opinions. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). It is well understood that the opinion of a non-examining physician, standing alone, does not constitute substantial evidence in the record in the face of a conflicting assessment of a treating physician, *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999); however, if an ALJ does not rely solely on a non-examining physician's opinion, but also upon an independent review of the medical evidence and other evidence, such as motivation to return to work and daily activities, then there is substantial evidence in the record to support the ALJ's RFC determination. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002); *see also Stormo v. Barnhart*, 377 F.3d 801, 807-808 (8th Cir. 2004). In the present case, there are no conflicting opinions of examining and treating physicians, and these medical expert opinions further support the ALJ's mental RFC determination.

Lastly, in addition to the medical evidence, the ALJ considered Plaintiff's activities of daily living ("ADL's"). Plaintiff reported being able to prepare simple meals, do house cleaning, do laundry, go outside alone regularly, drive a car, go shopping for food weekly, visit with others on the telephone or in person, care for her personal needs, and handle money. (T. 384-386, 408-409, 503) The ALJ found these reported ADL's to be inconsistent with her subjective allegations of disabling pain. (T. 24) The Court cannot say that the ALJ erred in so finding. *See, e.g., Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework,

-12-

shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends").

The ALJ considered and discussed the evidence of record as a whole, including treatment records, consultative examinations and opinions, State agency reviewing physician opinions, and Plaintiff's reported ADL's in reaching his RFC finding, and the ALJ properly accounted for any limitations supported by the evidence by restricting Plaintiff to medium work involving simple tasks with simple instructions and with only incidental contact with the public.

### IV. Conclusion

Having carefully reviewed and considered the entire record, the Court finds that substantial evidence supports the ALJ's Decision denying Plaintiff DIB and SSI benefits. The ALJ's Decision should be, and it hereby is, affirmed. Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of March, 2016.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-13-